**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 09-214 (RCL) |
| | : | |
| v. | : | |
| | : | |
| KAMRAN RAVANASA, | : | <u>UNDER SEAL</u> |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to find that the defendant, Kamran Ravanasa, is entitled to the benefits of a sentencing departure as provided by § 5K1.1 of the United States Sentencing Guidelines ("the Guidelines" or "USSG").  The United States submits this motion based on the substantial assistance, which Mr. Ravanasa has rendered in the investigation and prosecution of other persons and entities.  In addition, pursuant to § 3E1.1(b) of the Guidelines, the government moves for an additional one-level reduction in the defendant's offense level to reflect his timely guilty plea.

I. PROCEDURAL BACKGROUND

The defendant, Kamran Ravanasa, is a foreign national and a dual citizen of Canada and the Government of Iran ("Iran").  In June 2009, agents with the Federal Bureau of Investigation ("FBI"), U.S. Department of Commerce's ("DOC") Office of Export Enforcement ("OEE"), and the U.S. Department of Homeland Security ("HSI") arrested the defendant in the Central District of California.  After his arrest, the defendant waived his initial appearance and agreed to be quickly transported to the U.S. District Court for the District of Columbia for his initial

appearance, which occurred on July 16, 2009. At the July 21, 2009, detention hearing, the defendant conceded that there was probable cause to believe that he had violated 50 U.S.C. § 1705 and that he should be preventatively detained. On September 2, 2009, pursuant to a cooperation agreement reached with the government, the defendant pled guilty to Conspiracy to Export to an Embargoed Country, in violation of 50 U.S.C. § 1705, and Title 31, Code of Federal Regulations, Parts 560.203 and 560.204.

## II.    FACTUAL BACKGROUND

Between approximately May 2007 and April 2009, the defendant attempted to cause the export of U.S.-origin parachute-related materials and fabrics, worth approximately $151,111.20 to Iran. These materials included, among other things, Zero Porosity Nylon Ripstop Fabric, Javelin Reserve pilot chits, and Separable Link Drag Chutes, all of which have been identified as components of civilian and military high altitude airborne operations. Ultimately, the defendant caused the export of approximately $5,068 worth of parachute-related materials to Iran via Malaysia without a license from the U.S. Department of the Treasury's Office of Foreign Asset Control ("OFAC").

To fulfill his role in the export of U.S.-origin goods to Iran, the defendant represented himself as the general manager and managing director of New Generation International Trading, L.L.C. ("New Generation"), a trading company located in Dubai, United Arab Emirates ("UAE"). In addition, he also represented himself as the general manager of other companies, including: (1) Barsum Trading Company, also known as Barsam-Kish Commercial Company ("Barsum"), a trading company located in Kish Island, Iran; and (2) New Open Computing Company ("NEWOCC"), a trading company in Tehran, Iran. In his capacity as the general

manager of these trading companies, the defendant acted as the purchasing officer responsible for facilitating the transshipment of U.S.-origin goods to his customers who were located in Iran.

The defendant's specific involvement in the attempted export and export of parachute-related materials can be described as the facilitator between the manager of an Iranian trading company (herein "Person A")[1] and U.S. businesses.  In other words, the defendant directly contacted, or directed others to contact, U.S. businesses on behalf of Person A, an Iranian, for the purpose of Person A's acquisition of U.S.-origin parachute-related materials.

For example, between May 2007 and July 2007, Person A contacted the defendant to inquire about obtaining parachute-related materials and fabrics from a parachute equipment company located in Illinois (hereinafter "U.S.-parachute company").   In approximately August 2007, after having received a purchase order from Person A, the defendant contacted the U.S.-parachute company directly to obtain a price quote for the materials specified by Person A.  In response to the defendant's inquiry, on August 31, 2007, the U.S.-parachute company issued the defendant a price quote of approximately $151,111.20 for approximately thirty line items of parachute equipment in varying quantities.  Subsequently, between August 2007 and May 2008, the defendant frequently communicated with the U.S.-parachute company on Person A's behalf.  On January 11, 2008, a representative of the Government of Iran entered into a written contract with the defendant for the purpose of fabric and parachute supplies made by the U.S.-parachute company; the total amount of the contract was $196,643.58€  On May 19, 2008, the defendant caused $50,773.60 to be transferred to the U.S.-parachute company's U.S. bank account, to reflect a partial payment for the ordered parachute equipment.

---

[1] On October 2007, Person A was placed on DOC's Denied Party List, a list of individuals and entities with whom it is unlawful for U.S. companies to do business, based on Person A's involvement with the Iranian military.

In June 2008, an undercover company (hereinafter "UC company") working with HSI was introduced to the defendant as the transferred U.S.-source supplier for the ordered parachute equipment, effectively removing the U.S.-parachute company from the transaction. On July 15, 2008, the defendant submitted to the UC company a Form BIS-711, "Statement by Ultimate Consignee and Purchaser" (hereinafter "Form 711"). On the form, the defendant represented that he was the general manager of NGIT, located in Dubai, UAE, that his company was "investing on air sports and tourism entertainments," and that the goods would not be reexported from the UAE. In addition to making the aforementioned representations, the defendant signed the form underneath a warning that "all of the facts contained in this statement are true and correct."

Subsequently, on December 15, 2008, the UC company had a conversation with the defendant during which the UC company told the defendant that it suspected that the parachute equipment was being shipped to Iran. In response, the defendant told the UC company that this was not true and that the defendant was located in Dubai, UAE and that the goods would only be shipped to Dubai, UAE. On December 17, 2008, the defendant instructed the UC company to send the parachute equipment to a Malaysian company, Free International Trading Sdn. Bhd. ("FIT Company"), whom he identified as the new consignee of the products. On January 6, 2009, the managing director of FIT Company completed and signed a Form 711, in which he stated that the parachute equipment would be resold in Malaysia for "use or consumption therein," specifically for "producing kites for entertainment."

On January 16, 2009, the UC company advised FIT Company of the approximate delivery date and the cost of the order and requested guidance on the method of payment. After having received this communication from the UC company, on January 17, 2009, FIT Company

forwarded this information to the defendant, providing the defendant with the tentative delivery date and quoted price for shipping. On January 20, 2009, FIT Company informed the defendant that arrangements had been made with the Iran Air office to forward the items to Imam Khomeini International Airport ("IKIA"), located in Iran. On January 23, 2009, the UC company informed FIT Company that U.S. authorities had detained the shipment, which was destined for Malaysia. Upon receiving this information, on January 24, 2009, the defendant told the UC company that it was his understanding that the UC company had gotten "all needed permits before shipping," later instructing the UC company to cancel the order.

In April 2009, the UC company resumed communication with the defendant, during which the defendant expressed his commitment to acquiring the parachute equipment that had been ordered previously. On April 13, 2009, the UC company shipped two of the ordered items, with a value of $1,975 to FIT Company at its address in Malaysia via Federal Express, in accordance with the defendant's instructions. On April 14, 2009, the defendant sent an email to a representative of FIT Company stating, "I have a small shipment on its way to you via FedEx number []. It is scheduled for delivery on the 20th. I have attached the packing list for your review." The defendant attached to the email an invoice provided to the defendant from the UC company. On April 15, 2009, a FIT Company representative sent an email, responding to the defendant, stating, "Thanking you for your kind email. We will take care of the job. Kindly provide us the destination address and also kindly inform us about the dimension & weight of the package enabling us to get the quotation from Iran Air." On April 21, 2009, the FIT Company representative sent an email to the defendant notifying him that the package would arrive the next day in Tehran, Iran, attaching the Iran Air invoice quoting the price of shipping the product to Iran. On April 21, 2009, the defendant contacted the UC company and confirmed that FIT

Company had received the first shipment and that the UC company should send the remainder of the items. On April 24, 2009, the UC company shipped four of the ordered items, valued at $3,093 to FIT Company at its address in Malaysia, via Federal Express.

### III.     NATURE AND EXTENT OF COOPERATION

Before filing the instant motion to depart, the government considered all of the facts and circumstances present in this case. After balancing the defendant's conduct with the extent and productivity of the defendant's cooperation, which now exceeds five years, the government concluded that the instant motion was warranted. In this district, all departure motions made by the United States Attorney's Office for the District of Columbia must be reviewed by the United States Attorney's Office for the District of Columbia's Departure Committee ("Departure Committee"). Counsel for the government submitted this matter to the Departure Committee for its review, and the Departure Committee authorized the filing of this motion seeking a departure.

Since his arrest in July 2009, the defendant has been steadily cooperating with the government. In other words, when the defendant was first arrested, he waived his rights, agreed to speak with law enforcement, and not only admitted to his criminal conduct, but also provided substantial leads related to possible violations of U.S. sanctions, which law enforcement could pursue. From that point forward, the defendant has continued to cooperate with law enforcement for over five years. The defendant's cooperation has taken three primary forms: (1) participating in interviews with law enforcement ("debriefing sessions"), (2) providing law enforcement his business contacts and other documentary evidence related to the Iranian procurement network, and (3) participating in consensually-monitored or recorded telephone calls and sending email communications at the direction of law enforcement.

Between July and September 2009, while in custody in Washington, D.C., the defendant participated in numerous productive debriefing sessions with law enforcement. During the height of his cooperation, the defendant was participating in weekly debriefing sessions with law enforcement. During the defendant's debriefing sessions, Mr. Ravanasa provided valuable background information that allowed law enforcement to gain insight into the Iranian procurement network, as well as identify new investigative targets—some of which were unknown to law enforcement before learning about them through Mr. Ravanasa.

Mr. Ravanasa's cooperation also included providing law enforcement with all of his business contacts and transaction documents. Through this effort, law enforcement began investigating numerous individuals and entities. Finally, Mr. Ravanasa's cooperation included participation in approximately twelve recorded telephone calls with individuals suspected of violating U.S. sanctions against Iran. At the direction of law enforcement, Mr. Ravanasa also engaged in email communications with individuals suspected of violating the Iranian sanctions.

The defendant's cooperation has led to arrests, indictments, convictions, and intelligence products, all of which ultimately resulted in the prevention and disruption of unlawful exports and attempted exports of valuable U.S.-origin goods to Iran. The defendant's cooperation has assisted law enforcement in the following specific ways: (1) obtaining at least five indictments charging five different individuals and two companies; and (2) advancing the investigation in at least two separate investigations focused on U.S. persons or entities engaged in conduct in violation of U.S. sanctions. In addition to assisting law enforcement obtain indictments and open investigations, the defendant's cooperation, in particular the inside information provided by the defendant as a member of the Iranian procurement network who directly communicated with

Iranian procurement officers, also meaningfully advanced law enforcement's general understanding of the Iranian procurement network.

IV. CONCLUSION

The level of any departure is to be determined by the Court, based on the Court's evaluation of the significance and usefulness of the defendant's cooperation and other factors listed in USSG § 5K1.1, as well as Title 18, United States Code Section 3553, which include the following factors: (1) the nature and circumstances of the offense; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Mr. Ravanasa's USSG range is 46 to 57 months of incarceration. The government respectfully recommends that Mr. Ravanasa receive a substantial departure from the applicable USSG range based on the defendant's substantial assistance and cooperation with law enforcement, per USSG § 5K1.1. The government's request is based on Mr. Ravanasa's significant and productive cooperation, in addition to the following factors. First, Mr. Ravanasa has been on pretrial release since the entry of his plea in September 2009—since that time, he has been a productive member of the community, enhancing his education, joining the workforce, and has not substantially violated the terms of his release. Second, the government notes that similarly-situated defendants have received substantial departures from the applicable USSG range based on the quality and extent of their cooperation. For example, both Robert Kraaipoel and Robert Niels Kraaipoel received a significant departure from the applicable USSG range and were sentenced to a period of probation in 2009-CR-219 (PLF).

Accordingly, the government recommends that the Court impose a sentence of 5 years of probation. In reaching this position, we have balanced the defendant's culpability in the charged offense against the significant, extensive, and substantial cooperation he provided law enforcement, which has led to the successful prosecution of at least one individual, the indictment of several others, and the investigation of numerous others.

          Respectfully submitted,

          Ronald C. Machen Jr.
          United States Attorney
          DC Bar No. 447889

By:   _____
          Maia L. Miller, VA Bar No. 73221
          Assistant United States Attorney
          National Security Section
          555 Fourth Street, N.W., Room 11-445
          Washington, DC  20530
          (202) 252-6737

          Brian J. Fleming, D.C. Bar No. 974889
          Trial Attorney
          Counterespionage Section
          U.S. Department of Justice
          (202) 233-2262

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2014, a copy of the foregoing motion and memorandum was sent via electronic correspondence ("email") to parties of record.

                                                                                           _____
                                                                                           Maia L. Miller
                                                                                           Assistant U.S. Attorney